# UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| TIMOTHY J. ROE, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. CIV-17-1035-G |
| ) | |
| NANCY A. BERRYHILL, Acting ) | |
| Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |

## OPINION AND ORDER

Plaintiff Timothy J. Roe brings this action pursuant to 42 U.S.C. § 405(g) for judicial review of the final decision of the Commissioner of the Social Security Administration ("SSA") denying Plaintiff's application for disability insurance benefits ("DIB") under Title II of the Social Security Act, 42 U.S.C. §§ 401-434. The Court has reviewed the administrative record (Doc. No. 10, hereinafter "R. _"),[1] and the arguments and authorities submitted by the parties and affirms the Commissioner's decision.

I.  BACKGROUND

Plaintiff, formerly a floor hand in the oil field, was injured on the job on June 26, 2010, when a heavy metal object fell from an oil derrick from a height of approximately 60 feet and hit his right arm. He was immediately hospitalized with an open humerus

---

[1] With the exception of the administrative record, references to the parties' filings use the page numbers assigned by the Court's electronic filing system.

fracture and cervical nerve-root avulsion. From the beginning, Plaintiff was unable to feel the lower part of his right arm or move his dominant right hand. R. 12, 47, 59, 241, 245.

Doctors surgically repaired the fracture and performed nerve root transplants during the following months in an effort to restore function to Plaintiff's right arm and hand. The nerve damage to Plaintiff's right brachial plexus was too extensive to be repaired, however, and nineteen months after the accident, there was no evidence of reinnervation. Plaintiff was left unable to move his right arm except to shrug his shoulders. R. 12-14, 292-95, 306, 327.

Ultimately, doctors amputated Plaintiff's arm above the elbow. R. 14, 315-18. Although he was fitted with a myoelectric prosthetic device and underwent occupational therapy, Plaintiff testified that he is unable to actively use the device and rarely wears it. R. 48, 895, 897, 900-01.

In his application for DIB, Plaintiff listed seven medical conditions to which he attributed his disability: right-arm amputation, back injury and constant pain, optical nerve eye injury, neck injury and constant pain, right-hip pain, right-knee pain, and headaches. R. 177.

II. PROCEDURAL HISTORY AND ADMINISTRATIVE DECISION

Plaintiff protectively filed his DIB application on January 6, 2015, alleging a disability-onset date of February 12, 2014. R. 10, 157-60. The SSA denied his application initially and on reconsideration. R. 63-83. At Plaintiff's request, an administrative law judge ("ALJ") held a hearing on June 17, 2016, R. 40-62, after which the ALJ issued an unfavorable decision on October 21, 2016. R. 10-26. The Social Security Appeals Counsel

affirmed the ALJ's unfavorable decision on August 10, 2017, finding no reason to review the ALJ's decision. R. 1-5. The unfavorable determination of the ALJ stands as the Commissioner's final decision. *See* 20 C.F.R. § 404.981.

The ALJ followed the prescribed five-step sequential evaluation process in determining Plaintiff was not entitled to disability benefits. *See Wall v. Astrue*, 561 F.3d 1048, 1052 (10th Cir. 2009); 20 C.F.R. § 404.1520. At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity from February 12, 2014, the alleged disability-onset date, through December 31, 2015, the date Plaintiff was last insured for DIB. R. 12. At step two, the ALJ determined that Plaintiff has the following impairments:

> status post right grade 2 open humerus fracture with cervical nerve root avulsion injury; status post transfer of right distal accessory nerve to suprascapular nerve; transfer of intercostal nerves 3 through 6 to musculocutaneous nerve; and bank medial antebrachial cutaneous nerve graft to intercostal nerves 7 and 8, after being diagnosed with trauma and right brachial plexus; status post right arm trans-humeral amputation (above the elbow), as well as diagnosis of degenerative disc disease, unsupported by objective laboratory diagnostic findings, which singly and/or in combination are severe.

R. 12.

At step three, the ALJ found that Plaintiff does not have an impairment or combination of impairments that meet or medically equal the severity of any of the presumptively disabling impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. R. 21.

The ALJ next assessed Plaintiff's residual functional capacity ("RFC") based on all his medically determinable impairments. The ALJ found that during the relevant period

3

Plaintiff had the RFC to perform light work,[2] except that Plaintiff can never use right hand controls and cannot perform overhead reaching, fine or gross manipulation, or feeling with his right upper extremity. R. 21-24. At step four, the ALJ found that Plaintiff unable to perform his past relevant work as floor hand in the oil field, as that job requires at least heavy level of exertion. R. 24.

At step five, the ALJ considered whether there are jobs existing in significant numbers in the national economy that Plaintiff could perform in light of his age, education, work experience, and RFC. R. 25. Taking into consideration the hearing testimony of a vocational expert ("VE") regarding the degree of erosion to the unskilled light occupational base caused by Plaintiff's additional limitations, the ALJ concluded that Plaintiff could perform the light, unskilled occupations of ticket seller, cash clerk II, and laminating-machine off bearer, and that such occupations offer jobs that exist in significant numbers in the national economy. R. 25. Therefore, the ALJ determined Plaintiff had not been disabled within the meaning of the Social Security Act during the relevant period. R 26; *see* 20 C.F.R. § 404.1520(a)(4)(v).

---

[2] Pursuant to relevant regulation:

> Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time.

20 C.F.R. § 404.1567(b).

III. STANDARD OF REVIEW

This Court's judicial review of the Commissioner's final decision is limited to determining whether factual findings are supported by substantial evidence in the record as a whole and whether correct legal standards were applied. *Poppa v. Astrue*, 569 F.3d 1167, 1169 (10th Cir. 2009). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Doyal v. Barnhart*, 331 F.3d 758, 760 (10th Cir. 2003) (internal quotation marks omitted). "A decision is not based on substantial evidence if it is overwhelmed by other evidence in the record or if there is a mere scintilla of evidence supporting it." *Branum v. Barnhart*, 385 F.3d 1268, 1270 (10th Cir. 2004) (internal quotation marks omitted). The court "meticulously examine[s] the record as a whole," including any evidence "that may undercut or detract from the ALJ's findings," in determining whether the ALJ's decision is supported by substantial evidence. *Wall*, 561 F.3d at 1052 (internal quotation marks omitted). Though a reviewing court considers whether the Commissioner followed applicable rules of law in weighing particular types of evidence in disability cases, the court does not reweigh the evidence or substitute its own judgment for that of the Commissioner. *Bowman v. Astrue*, 511 F.3d 1270, 1272 (10th Cir. 2008).

IV. THE CONSULTATIVE EXAMINATION

Sidney D. Williams, MD, examined Plaintiff at the request of the state agency on March 17, 2015. R. 923-31 (Ex. 10F). Based on his interview of Plaintiff, Dr. Williams reported the following symptoms as Plaintiff described them:

> The resultant chronic pain level is high: estimated to be 6.5 on 0/10 numeric rating scale of intensity, located in the right shoulder, stump right [arm,] low

5

> back and neck, is constant in timing. The pain limits standing longer than 30 minutes, sitting longer than 10-20 minutes, or walking farther than 1 block. Sometimes the pain down the left leg makes the leg feel "dead." The pain interferes with use of the remaining hand (left) while holding cups. [The] pain impairs his ability to climb stairs, [bathe] in bath tub (trouble getting out of the tub), climbing stairs, bending, stooping, squatting, and reaching. [The] pain interferes with getting up and down from a toilet, completing household chores like mowing the lawn, and riding motorcycles which was his hobby with his friends before the accident.

R. 923. Dr. Williams also reported he had relied on the medical records of Dr. Kenneth Trinidad documenting Plaintiff's treatment after his accident and a report from the Tulsa Spine and Specialty Hospital that described a disc protrusion at L4-5. R. 923.

Upon examination, Dr. Williams reported mild reduction of motion in Plaintiff's neck, tenderness and restricted motion in the spine, and "[r]estricted ability to stand or sit over 1 hour [without] moving about". R. 924-25. Other neurological findings included reduced reflexes in ankle and knee on the left, positive straight leg raising on the left, positive Kernig's sign on the left, and normal tandem walking. R. 924-25. Heel walking and toe walking were both normal. R. 929.

Dr. Williams diagnosed Plaintiff with lumbar discogenic pain syndrome, left sciatica neuralgia, chronic neck pain, cervical disc disease, chronic postoperative pain, substantial physical debility, and "[g]ait impairment with limited ambulatory skills and reduced walking distance." R. 925.

In the written decision, the ALJ thoroughly discussed Dr. Williams' opinion, specifically noting the "[g]ait impairment" diagnosis. R. 17, 18. He also concluded that Dr. Williams' opinion regarding Plaintiff's restricted ability to "'stand or sit over one hour w/o moving about'" was "somewhat inconsistent[]" with the doctor's own examination

6

results, specifically: (1) Dr. Williams' finding of normal range of motion for all of Plaintiff's joints other than some limitation in the back, neck, and right shoulder; (2) Dr. Williams' finding that "heel and toe walking . . . was normal bilaterally"; and (3) Dr. Williams' finding that "tandem walking . . . was normal." R. 17; *see* R. 925.

V. DISCUSSION

In this action, Plaintiff raises one challenge to the ALJ's written decision—that the ALJ committed prejudicial legal error in implicitly rejecting the diagnosis of Dr. Williams of "[g]ait impairment with limited ambulatory skills and reduced walking distance." R. 925. Plaintiff argues that (i) the ALJ failed to provide valid and legitimate reasons for rejecting this opinion; and that the ALJ's error prejudiced Plaintiff because (ii) the opinion, if accepted, would have limited Plaintiff to sedentary rather than light work, and (iii) Plaintiff is unable to perform sedentary work due to his upper-extremity amputation. *See* Pl.'s Br. (Doc. No. 14) at 9-10.

Defendant does not dispute that the ALJ rejected Dr. Williams' diagnosis, that acceptance of Dr. Williams' diagnosis would result in an RFC limiting Plaintiff to sedentary work, or that Plaintiff is unable to perform sedentary work. Defendant disputes, however, the proposition that the ALJ's implicit rejection of the diagnosis constituted reversible legal error. Defendant argues instead that the ALJ's reasoning was sufficiently clear to "allow[] the Court to discern that the ALJ rejected the opinion because of contradictory medical evidence." Def.'s Br. (Doc. No. 16) at 10; *see also id.* at 14.

The Court agrees with Defendant that the ALJ's treatment of Dr. Williams' opinion was legally adequate and properly based upon record evidence. Even assuming that

adoption of Dr. Williams' "[g]ait impairment" opinion would have resulted in an RFC that precluded light work, and accepting that Plaintiff would be unable to perform sedentary work, the Court finds no reversible legal error here.

The ALJ was required to "evaluate," "consider," and "address" the examining physician's medical opinions. 20 C.F.R. § 404.1527(b), (c); SSR 96-8p, 1996 WL 374184, at *7 (July 2, 1996); see also 20 C.F.R. § 404.1502 (2016). While an examining medical-source opinion "may be dismissed or discounted," such action "must be based on an evaluation of all of the factors set out in the cited regulations and the ALJ must provide specific, legitimate reasons for rejecting it." *Chapo v. Astrue*, 682 F.3d 1285, 1291 (10th Cir. 2012) (internal quotation marks omitted); see 20 C.F.R. § 404.1527(c)(1)-(6); SSR 96-8p, 1996 WL 374184, at *7.

With respect to the ALJ's failure to expressly assign a weight to Dr. Williams' "[g]ait impairment" diagnosis, it is apparent—and both parties agree—that the ALJ rejected that opinion and associated functional limitations in formulating an RFC with no ambulation restrictions. R. 21. Thus, the failure of the ALJ to expressly assign a weight (or, rather, no weight) to, or to note the fact of his rejection of, the "[g]ait impairment" diagnosis is, at most, a "merely technical omission[]," which does not dictate reversal so long as the Court "can follow the adjudicator's reasoning" and "can determine that correct legal standards have been applied." *Keyes-Zachary v. Astrue*, 695 F.3d 1156, 1166 (10th Cir. 2012); *cf. Oceguera v. Colvin*, 658 F. App'x 370, 374 (10th Cir. 2016) ("Though the ALJ did not expressly state the weight she gave to the [the treating physician's] opinion,

her language makes clear that she accorded it little to no weight."). Here, the Court is able to do both.

As noted, the ALJ undisputedly "discuss[ed]" the relevant diagnosis, *Clifton v. Chater*, 79 F.3d 1007, 1010 (10th Cir. 1996). In that same discussion, the ALJ also cited three of Dr. Williams' own examination findings as inconsistent with Dr. Williams' conclusion that Plaintiff was restricted in his ability to stand or sit without moving about. R. 925. Read in context of the ALJ's entire evaluation of the consultative-exam report, the Court can readily discern that "the reason [the ALJ] gave [Dr. Williams'] [gait-impairment] opinion no weight is because," like Dr. Williams' stand/sit restriction, "it is inconsistent with" the three range-of-motion and walking findings. *Lately v. Colvin*, 560 F. App'x 751, 754 (10th Cir. 2014) (finding ALJ's failure to discuss an examining physician's opinion was harmless where the court "c[ould] tell" from the ALJ's rejection of a "nearly identical opinion" that the ALJ gave no weight to the opinion and the reasons why). An examination that does not find significant limitations on walking or most ranges of motion is reasonably equally or more relevant to a claimant's ambulation ability as to the claimant's ability to stand or sit for prolonged periods. *See* R. 927-30; *Endriss v. Astrue*, 506 F. App'x 772, 780 (10th Cir. 2012) (finding that objective evidence, including "normal heel/toe gait," supported an RFC assessment for light work); *Poppa*, 569 F.3d at 1172-73 (upholding the ALJ's RFC determination for light work where the ALJ cited records showing the claimant's "relatively full range of motion" in the upper extremities and "minimal decrease in range of motion in the lower back area"); *cf. Best-Willie v. Colvin*, 514 F. App'x 728, 736 (10th Cir. 2013) ("[A]lthough the ALJ's decision does not expressly address this lay

9

witness evidence, any error in failing to do so is harmless because the same evidence that the ALJ referred to in discrediting the claimant's claims also discredits the lay witness's claims." (internal quotation marks omitted)).

Further, an inconsistency between such findings and the physician's conclusions is a proper reason for those conclusions to be discounted. *Vigil v. Colvin*, 805 F.3d 1199, 1202 (10th Cir. 2015) (citing 20 C.F.R. § 404.1527(c)(3)). And Plaintiff does not dispute the ALJ's characterization of Dr. Williams' relevant examination findings. *See* Pl.'s Br. at 9; R. 17, 927-30.

Thus, any error in the ALJ's failure to state what weight he was affording the consultative physician's gait-impairment finding was harmless, and Plaintiff has not shown that reversal is warranted. *See Lately*, 560 F. App'x at 754; *Keyes-Zachary*, 695 F.3d at 1166; *Alvey v. Colvin*, 536 F. App'x 792, 794 (10th Cir. 2013) (noting that harmless-error review may be properly employed when "the record is not overly long or complex, harmlessness is not fairly debatable, and reversal would result in futile and costly proceedings").

## CONCLUSION

The decision of the Commissioner is affirmed. A separate judgment shall be entered.

IT IS SO ORDERED this 25th day of March, 2019.

_____
CHARLES B. GOODWIN
United States District Judge